IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JIMMY WOODALL,

    Plaintiff,

v.                                                         Case No. 1:23-cv-00862 LF-JMR

WESTERN EXPRESS, INC.,
and CURT MOELLER,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Claim of Right Shoulder Injury for Discovery Abuse and Supporting Memorandum Brief, filed June 21, 2024 (Doc. 87) and Defendants' Second Motion to Dismiss for Discovery Abuse and Supporting Memorandum Brief, filed September 10, 2024 (Doc. 118). In the first motion, Defendants seek dismissal of Mr. Woodall's claim of right shoulder injury as a sanction for discovery abuse. Doc. 87 at 1. In the second motion, which includes the contents of the first motion, Defendants seek dismissal of the case entirely as a sanction for discovery abuse. Doc. 118 at 1. Having reviewed the parties' submissions and the applicable law, the Court grants the motion in part and denies it in part.

## BACKGROUND

This case arises out of a vehicle collision which took place in July 2022 in Gallup, New Mexico. Doc. 43 at 2. In the complaint, Mr. Woodall alleges only that he sustained "severe and disabling injuries" as a result of the collision; he does not specify what those injuries were. *Id.* He seeks medical expenses along with damages for physical and mental pain and suffering,

physical impairment, loss of enjoyment of life, and lost wages. *Id.* at 6. Defendants move to dismiss the case based on Mr. Woodall's actions during the discovery process. *See generally* Doc. 118. The dispute surrounds the following topics.

<u>Previous Right Shoulder Injury</u>

Defendants assert that Mr. Woodall responded to Interrogatory No. 4, which asked about preexisting injuries or illnesses, by discussing only previous injuries to his *left* shoulder and a diagnosis of type 2 diabetes. Doc. 87 at 2; *see also* Doc. 87-1 at 2 (Interrogatory No. 4 and answer, which stated that the collision caused injuries to both shoulders in part (a) but discussed preexisting injuries only to his left shoulder in part (b) and his type 2 diabetes diagnosis in part (c)). Defendants also assert that Mr. Woodall responded to Interrogatory No. 8, which asked about previous incidents or accidents that injured him before the accident in this case, by discussing a motorcycle accident that injured Mr. Woodall's head, left shoulder, and ribs. Doc. 87 at 2–3; Doc. 87-3 (Interrogatory No. 8 and answer).

Defendants point to other records indicating that Mr. Woodall injured his *right* shoulder in the motorcycle accident; that he had experienced some right shoulder pain for a year and a half following the motorcycle accident and that it became difficult for him to sleep on his right shoulder in the month leading up to his January 29, 2019, doctor's appointment; and that he underwent an injection to his right shoulder in 2019. Doc. 87 at 2–3; Doc. 87-5 at 1; Doc. 87-7; Doc. 87-8. They claim that these documents prove that Mr. Woodall lied in his interrogatory responses.

Mr. Woodall states that documentation from Baylor Scott & White Health on August 1, 2017, inaccurately refers to a complete tear of his right rotator cuff. Doc. 91 at 3 (citing Doc. 91-9). Defendants acknowledge that the right rotator cuff diagnosis was likely a mistake, and for

2

that reason they did use that documentation as support for the right shoulder injury in their motion. Doc. 96 at 3. Rather, their focus is on subsequent documentation, which refers to ongoing right shoulder pain and prior right shoulder injections. *Id.* at 3–4.

More generally, Mr. Woodall also states that he disclosed all medical records from all medical providers. Doc. 91 at 2; *see also* Doc. 91 at 6, 8 ("While it is true that the right shoulder was not listed in the answers to Interrogatory No. 4, Plaintiff did disclose the medical providers who had treated his prior right shoulder pain, medical records were produced which describe the prior treatment to his right shoulder, and Plaintiff discussed his prior right shoulder injury in his deposition."). Defendants' argument, however, is that "in Plaintiff's numerous Initial Disclosures, Responses to Interrogatories and Requests for Production, Plaintiff lied, hid discoverable information, engaged in a pattern of deception, and misrepresented the very facts that are critical to this case." Doc. 87 at 2. That is, the basis of Defendants' motion is not that Mr. Woodall failed to disclose his medical records, but that he lied or omitted relevant information when questioned.[1]

Other Injuries

In their second motion, Defendants also point to issues with Mr. Woodall's responses to Interrogatories No. 4 and 8. They claim he said he did not have preexisting injuries or problems with his neck, back, or hands despite medical records indicating that such injuries existed. Doc. 118 at 5–7. Mr. Woodall's medical records indicate a history of neck pain reported at doctor's visits in 2017, 2019, and 2020 following his motorcycle accident. *Id.* at 5. In addition to responding to the interrogatories without referring to a neck injury, however, Mr. Woodall told

---

[1] Defendants also claim that Mr. Woodall failed to provide an accurate medical history to his surgeon following the collision. Doc. 87 at 13–14. However, this conduct is not a discovery violation, as it took place before this case was filed.

3

Dr. Craig Callewart, his surgeon, that he had "no neck trouble prior to [the] collision" at issue in this case and did not tell him about the 2017 motorcycle accident. *Id.* at 6. Defendants also argue that following the 2017 motorcycle accident, Mr. Woodall reported lower back pain, but on several instances in 2022, he denies a history of lower back pain. *Id.* at 6–7. Additionally, in his deposition, Mr. Woodall denied hand, finger, and wrist pain, but medical records indicate that he was prescribed finger injections in 2020 for his bilateral hand pain. *Id.* at 7.

Mr. Woodall responds that he had only one complaint of neck and back pain in 2017 with no treatment for either, and that he has not deposed any doctors to prove hand injuries in this case, rendering the evidence about that part of his body moot. Doc. 121 at 2.

Disability Benefits, Work History, and Workers' Compensation

Defendants point to Interrogatory No. 10, which asked whether Mr. Woodall had received disability benefits previously, to which Mr. Woodall responded "none." Doc. 87 at 3; Doc. 87-4. They take issue with this statement because they received discovery indicating that Mr. Woodall visited a doctor's office for disability paperwork purposes. Doc. 87 at 3–4; Doc. 87-6. Mr. Woodall states that the documentation refers to "functional capacity paperwork" rather than disability paperwork. Doc. 91 at 3–4. Both terms appear in the relevant exhibit. Doc. 87-6.[2]

Defendants also raise the issue of Mr. Woodall's work history. They argue that Mr. Woodall indicated that he left his last place of employment, Wastelinq, Inc., on January 20, 2023, because of the injury in this case and that he has not worked since. Doc. 118 at 8. However, they claim, on May 21, 2024, Mr. Woodall's physician noted that he is currently working with restrictions. *Id.* at 10. Mr. Woodall responds that the records Defendants cite regarding his work

---

[2] The Court notes that the medical notes and disability paperwork do not indicate that Mr. Woodall had received disability benefits—only that he had applied for them.

4

status indicate that he was disabled and unable to obtain and retain employment at wages equivalent to his pre-injury wage. Doc. 121 at 2.

Additionally, Defendants assert that Mr. Woodall filed a worker's compensation claim in August 2023 and received $55,000.00 in back pay in February 2024, but he did not identify his worker's compensation claim when asked if he had ever filed one in Interrogatory No. 11. During his May 2024 deposition, Mr. Woodall initially stated that he had never filed a worker's compensation claim before later correcting this statement in the same deposition. *Id.* at 9.

## LEGAL STANDARD

When considering whether dismissal is an appropriate sanction for discovery violations, the Court looks to the factors outlined in *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992). These factors include the "degree of actual prejudice to the defendant," "the amount of interference with the judicial process," "the culpability of the litigant," "whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance," and "the efficacy of lesser sanctions." *Id.* at 921. District courts enjoy "very broad discretion" in this area. *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011). Nonetheless, dismissal remains a harsh consequence applicable "only when the discovery violation arises out of willfulness, bad faith, or some fault of the party." *Stenson v. Edmonds*, 86 F.4th 870, 877–78 (10th Cir. 2023).

## ANALYSIS

### I. Degree of Actual Prejudice to Defendants

The degree of actual prejudice Defendants face in this case is minor. It is true that Mr. Woodall failed to answer his interrogatories completely and truthfully; he admits as much. Doc. 91 at 8; Doc. 121 at 20. This misinformation is prejudicial because it instills a false sense of

complacency in its recipient: it suggests that there is no need to look into the medical records for information on Mr. Woodall's right shoulder, neck, or back because there is no history of injury in those places. *See Sandoval v. Martinez*, 1989-NMCA-042, ¶ 9, 109 N.M. 5, 8–9 (interrogatory answer falsely denying existence of discoverable information is worse than failure to respond because party serving interrogatory may never learn that it has not received an answer).[3]

However, the prejudice is not fatal; Defendants did receive the medical records from which they learned that Mr. Woodall does have a history of right shoulder, neck, and back injuries from his motorcycle accident. Further, they were able to depose Mr. Woodall about some of these injuries. *See generally* Doc. 91-12 (right shoulder); Doc. 121-6 at 1 (back and ribs). These other avenues of information mitigate some of the prejudice Defendants might otherwise have faced as a result of Mr. Woodall's inaccurate interrogatory responses. As a result, the Court finds that this factor is neutral.

## II.     Interference with the Judicial Process

The amount of interference with the judicial process weighs against dismissal. Of course, the Court takes dishonesty seriously and finds it disruptive to the truth-finding functions of discovery and trial. On the other hand, the inaccuracies in this case can be remedied.

Defendants argue that their ability to cross-examine Dr. Dillin and Dr. Callewart and depose Mr. Woodall was compromised by their lack of information. Doc. 87 at 12; Doc. 118 at 18. The Court agrees that the incorrect interrogatory responses misled Defendants, even if the

---

[3] To the extent Defendants raise Mr. Woodall's initial misstatement in his deposition that he had never filed a worker's compensation claim, which he later corrected in the same deposition, the Court finds no prejudice due to the prompt correction. To the extent Defendants raise the inaccurate statements Mr. Woodall made about his medical history to his physicians, these are certainly grounds upon which to impeach Mr. Woodall for his memory or truthfulness, but they are not violations of any oath or obligation to speak truthfully to the Court.

truth could be found buried in the medical records. *See* Doc. 121 at 18 (arguing that Defendants had access to certain records before the depositions were taken). While Defendants were in possession of Mr. Woodall's medical records before the depositions and it is certainly Defendants' responsibility to do their due diligence and investigate them, as they did in this case, Mr. Woodall's failure to identify the full extent of his injuries from the motorcycle accident gave Defendants a false sense of what the records would contain. Allowing Defendants to re-depose Dr. Dillin and Dr. Callewart with the benefit of the information they now have acquired will ameliorate the harm.

Additionally, the ambiguities regarding Mr. Woodall's work history in the documentation render his ability to work unclear—it appears that Mr. Woodall was found disabled and unable to return to work during the month of March 2024, but that he was cleared to perform sedentary work beginning in early April 2024 and light work starting in mid-May 2024. Doc. 121-12 at 2. His May 21, 2024, examination report indicates that at the time of the examination, he was working with restrictions. Doc. 118-16 at 1. For his part, Mr. Woodall stated in an interrogatory response on May 23, 2024, that he had been unable to return to work since January 20, 2023. Doc. 118-17 at 3. This statement conflicts with the statement in his medical record indicating that he had returned to limited work in May 2024 and is grounds to depose him again for greater clarity on his work status.

The need to repeat these depositions is certainly an inconvenience. Although discovery closes today, Doc. 53, the Court has conferred with Judge Rozzoni, and she will extend the discovery deadline as needed to accommodate the additional depositions necessary to resolve these issues.

### III. Culpability of the Litigant

Mr. Woodall's culpability weighs in favor of dismissal. Mr. Woodall provided incomplete and misleading answers to multiple interrogatories and did not correct these answers throughout the discovery process. He claims that he "forgot," Doc. 91 at 8, but the medical records indicate that he experienced right shoulder pain for over a year and a half, Doc. 87-7. Mr. Woodall's right shoulder pain is not a minor or fleeting injury that might be easily overlooked, unlike his back or neck pain, which appear not to have been chronic in nature. Mr. Woodall's honesty is fully within his own control. *See LaJeunesse v. BNSF Ry. Co.*, 333 F.R.D. 649, 674 (D.N.M. 2019) (litigant "was able to provide more complete and truthful responses, but failed to do so as required by law and the oath under which he testified"; litigant therefore was culpable). Mr. Woodall's failure to tell the whole truth in his interrogatory answers favors dismissal.

### IV. Advance Warning

The parties agree that Mr. Woodall has not received any warning in advance that dismissal was a likely sanction for his interrogatory responses. *See* Doc. 87 at 15; Doc. 91 at 8. The Court notes, however, that when a party gives false answers under oath, such as false interrogatory responses, "additional warnings are superfluous at best." *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009) (internal quotation marks omitted).

### V. Efficacy of Lesser Sanctions

Finally, and most importantly in this case, the Court finds that lesser sanctions will be effective to remedy Mr. Woodall's wrongful discovery conduct. Defendants argue that they were unable to depose Dr. Dillin and Dr. Callewart adequately because of Mr. Woodall's false interrogatory responses. Doc. 96 at 7–8; Doc. 118 at 18. A lesser sanction, such as payment for Defendants to depose Dr. Dillin, Dr. Callewart, and Mr. Woodall more completely, would

8

adequately remedy these harms. Defendants argue, essentially, that Mr. Woodall has broken the Court's trust. Doc. 87 at 14. Although it is true that Mr. Woodall's behavior casts doubt upon his candor, the violations were not so egregious as to cause the Court to lose all hope. With lesser sanctions, the Court sends a clear message to Mr. Woodall about the importance of truthful interrogatory responses with the expectation that no further violations occur. Further, the repeated depositions will iron out any confusion.

Because lesser sanctions are appropriate, and because the discovery calendar can be extended without significant disruption to the case, dismissal is not warranted. But this order will serve as a warning to Mr. Woodall that further dishonesty in responding to discovery may result in additional sanctions, including dismissal of this case.

## **CONCLUSION**

The Court grants in part and denies in part Defendants' motion to dismiss (Doc. 87) and second motion to dismiss (Doc. 118). Rather than granting dismissal, the Court imposes the following sanctions:

1. Defendants are permitted to depose Dr. Dillin, Dr. Callewart, and Mr. Woodall again regarding Mr. Woodall's preexisting injuries, work history, and disability claims. These depositions shall be at Mr. Woodall's expense.

2. Defendants are hereby awarded reasonable attorney's fees and costs in connection with the filing and briefing of the motions to dismiss (Docs. 87 and 118). Defendants are ordered to file a motion for attorney's fees and costs within thirty days of the filing of this Memorandum Opinion and Order.

Defendants' request for a full evidentiary hearing on this motion is denied. It is so ordered.

_____
UNITED STATES MAGISTRATE JUDGE
LAURA FASHING