IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JIMMY WOODALL,

    Plaintiff,

v.                                              Case No. 1:23-cv-00862 LF-JMR

WESTERN EXPRESS, INC.,
and CURT MOELLER,

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING DAUBERT MOTIONS**

This matter comes before the Court on Defendants' Motion to Exclude the Opinions of Dr. Dillin (Doc. 137) and Defendants' Motion to Exclude the Opinions of Craig Callewart, M.D. (Doc. 138). These two motions, filed pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702, seek to exclude Mr. Woodall's treating physicians from testifying at trial at all. Doc. 137 at 1; Doc. 138 at 1. In the alternative, they seek to limit the scope of these physicians' testimony to recounting the treatment they provided to Mr. Woodall. Doc. 153 at 4; Doc. 155 at 4. Mr. Woodall responded to both motions. Docs. 144, 145. The Court, having reviewed the parties' submissions and the applicable law, finds that Defendants' motions are not well-taken and therefore DENIES both motions for the reasons outlined below.

**BACKGROUND**

This case arises out of a vehicle collision which took place in July 2022 in Gallup, New Mexico. Doc. 43 at 2. In the complaint, Mr. Woodall alleges that he sustained "severe and disabling injuries" as a result of the collision. *Id.* He seeks medical expenses along with damages

for physical and mental pain and suffering, physical impairment, loss of enjoyment of life, and lost wages. *Id.* at 6.

Mr. Woodall has listed Dr. Linden Dillin and Dr. Craig Callewart as treating physicians. Doc. 144-1 at 4–5. Mr. Woodall intends to call Dr. Dillin to testify regarding his shoulder injuries, Doc. 137 at 1–2, and to call Dr. Callewart to testify regarding his neck and back injuries, Doc. 138 at 1–2. Defendants seek to preclude testimony from these experts. Docs. 137, 138.

## ANALYSIS

### I. Disclosures and Reports

Defendants first argue that Dr. Dillin and Dr. Callewart were not designated as expert witnesses and therefore should not be allowed to testify as experts. Doc. 137 at 4; Doc. 138 at 4. Mr. Woodall responds that he classified Dr. Dillin and Dr. Callewart as non-retained expert witnesses in his Eleventh Supplemental Initial/Expert Disclosure on July 24, 2024. Doc. 144 at 2; Doc. 145 at 2; *see also* Doc. 144-2 (Plaintiff's Eleventh Supplemental Initial/Expert Disclosure). Federal Rule of Civil Procedure 26(a)(2) states that "a party must disclose . . . the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." The applicable local rule, D.N.M.LR-26.3, affirms this obligation. Here, Mr. Woodall disclosed Drs. Dillin and Callewart as expert witnesses in his Eleventh Supplemental Initial/Expert Disclosure. Doc. 144-2. He therefore has satisfied the disclosure requirement.

Defendants argue in their reply that because Drs. Dillin and Callewart are expected to testify regarding causation and future treatment, they were required to produce expert reports pursuant to Federal Rule of Civil Procedure 26(a)(2)(B). Doc. 153 at 1; Doc. 157[1] at 1. The

---

[1] Both Documents 155 and 157 are entitled "Defendants' Reply in Support of Defendants' Motion to Exclude the Opinions of Dr. Dillin." The Court assumes that the later-filed document, Doc. 157, is the intended operative reply.

2

motions to exclude did not raise this argument, and arguments raised for the first time in a reply brief are waived. *In re: Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1112 n.5 (10th Cir. 2017). Even if the motions had included this argument, the local rules quickly dispense with it: "[Expert] reports need not be provided as to hybrid fact/expert witnesses such as treating physicians." D.N.M.LR-Civ. 26.3(b). Moreover, treating physicians may testify regarding causation, prognosis, and/or future treatment under specified circumstances. *See, e.g.*, *Wilks v. BNSF Ry. Co.*, No. 18-cv-080-KEW, 2021 WL 1236780, at *2 (E.D. Okla. Mar. 31, 2021) (treating physician may testify regarding causation of injuries if determination of causation was integral to treatment or evident from treatment); *George v. Metro. Prop. & Cas. Ins. Co.*, No. 18-cv-01663-PAB-SKC, 2020 WL 70424, at *6 (D. Colo. Jan. 2, 2020) ("Causation opinions formed as a result of the treating physician's own treatment of the plaintiff, and relevant to the treatment that the physician provided, do not require an expert report."); *Adrean v. Lopez*, No. 10-cv-0670-CVE-FHM, 2011 WL 6141121, at *3 (N.D. Okla. Dec. 9, 2011) (treating physician's testimony may include opinions regarding "'prognosis, the extent of present and future disability, and the need for future medical treatment,'" so long as the opinions are based on the physician's personal knowledge gained from the care and treatment of the plaintiff) (quoting *Goeken v. Wal-Mart Stores, Inc.*, No. 99-cv-4191-SAC, 2001 WL 1159751, at *3 (D. Kan. Aug. 16, 2001)).

## II.     Assistance to the Trier of Fact

Next, Defendants argue that Drs. Dillin and Callewart will not provide testimony that assists the trier of fact because the physicians admit that they cannot opine as to the extent to which Defendants caused Mr. Woodall's alleged injuries. Doc. 137 at 6; Doc. 138 at 6. Their arguments on this issue overlap in some respects with the arguments in their Motion for Partial Summary Judgment, Doc. 136, which the Court denied. *See* Doc. 165. There, Defendants argued

that Mr. Woodall could not prove the extent of the aggravation to his injuries because Drs. Dillin and Callewart could not quantify the extent of aggravation to Mr. Woodall's preexisting injuries; Defendants claimed that medical testimony was necessary for Mr. Woodall to prove aggravation. *See* Doc. 165 at 3. But medical testimony about the percentage of aggravation is not the sole method of proving aggravation; the plaintiff's own comparative testimony is also an option. *Id.* at 4–5. Here, Defendants argue that because Drs. Dillin and Callewart cannot testify as to the extent of causation or aggravation, their testimony is useless to the trier of fact. Doc. 137 at 6–7; Doc. 138 at 6–7.

Again, testimony by the doctors to quantify the extent of aggravation to Mr. Woodall's preexisting injuries is not required. *See generally* Doc. 165. Furthermore, quantifying the extent of aggravation is not the sole purpose that the doctors' testimony may serve. Mr. Woodall points out that Drs. Dillin and Callewart both have "personal knowledge of the care, diagnosis, causation, past/future treatment, and costs of past/future treatment regarding [Mr.] Woodall's injuries" and therefore will be of assistance to the trier of fact. Doc. 144 at 5; Doc. 145 at 5. Drs. Dillin and Callewart examined and treated Mr. Woodall and can provide context and explanations for the tests they performed and the results of those tests. Doc. 144 at 6; Doc. 145 at 6.

The Tenth Circuit has held that a court considering whether an expert will assist the trier of fact should consider "(1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006). The Court finds that testimony from Mr. Woodall's treating physicians certainly is relevant—as discussed above, these doctors have knowledge of the diagnoses and treatments Mr. Woodall

4

received after the vehicle collision at issue and can provide useful medical opinions regarding his injuries.

As for the jurors' common knowledge, "courts must conduct a common-sense inquiry into whether a juror would be able to understand certain evidence without specialized knowledge." *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014). Here, common sense counsels that most jurors cannot interpret medical diagnoses or determine the relevance of test results such as "negative belly press sign," "mild pain with bear hug test," "Neer impingement sign," or "positive SLAPprehension test." Doc. 144 at 6. Similarly, it is beyond the ken of most jurors to understand what a "cervical fusion" is or why it might be necessary. Doc. 145 at 6. The Court therefore finds that Drs. Dillin and Callewart would testify to matters beyond jurors' common knowledge and experience.

Finally, the doctors' testimony will not remove from the jury the role of evaluating credibility. Rather, it will provide context for Mr. Woodall's comparative testimony, which will *assist* the jury by allowing jurors to compare Mr. Woodall's statements to the information the doctors could provide. The parties' submissions do not suggest that the doctors will assess anyone's credibility; instead, they will interpret test results and diagnoses and explain the significance of Mr. Woodall's injuries and treatment to the jury.

Based on the above inquiry, the Court finds that Drs. Dillin and Callewart will assist the trier of fact.

### III. Foundation and Reliability

Finally, Defendants argue that the testimony of Drs. Dillin and Callewart should be excluded as unreliable and without foundation. Doc. 137 at 8–9; Doc. 138 at 9–10. The reasons they cite largely pertain to documents or other evidence that Drs. Dillin and Callewart have not

5

reviewed. Doc. 137 at 9–10; Doc. 138 at 10–11. That is, they argue that because the doctors have not reviewed some of the evidence, such as police reports, court documents, and earlier medical documentation following Mr. Woodall's 2017 motorcycle accident, the doctors do not have the requisite foundation upon which to form reliable opinions. Doc. 137 at 9; Doc. 138 at 10.

*Daubert* reliability standards require an expert to testify "based on scientific knowledge, which implies a grounding in the methods and procedures of science based on actual knowledge, not subjective belief or unsupported speculation." Here, the experts will be testifying based on their medical training, review of certain medical records, tests performed, and treatments or surgeries administered. *See* Doc. 144 at 9; Doc. 145 at 8–9. Defendants do not argue that Drs. Dillin and Callewart have inadequate medical training, administered scientifically dubious tests, or performed unnecessary surgeries. Therefore, there is no concern about the doctors' methodology or foundation of scientific knowledge. Rather, Defendants argue that the doctors' review of records is incomplete, which will render their opinions speculative. They appear to rely on Federal Rule of Evidence 702, which requires that an expert's testimony be "based on sufficient facts or data." FED. R. EVID. 702(b).

The type of facts and data necessary depends on the topic about which the doctors will testify. Mr. Woodall indicates that he intends to have the doctors testify about his history, injuries, conditions, and diagnosis; the cause of the injuries the doctors diagnosed; his treatment plan; his limitations and recovery process; the necessity of treatment; the reasonableness of the medical charges assessed; the need for future treatment; and explanations and reasonable cost for that treatment. *See generally* Doc. 144-2. It appears that the only speculation Defendants are concerned about pertains to the cause of the injuries, as they repeatedly raise the issue of Mr.

Woodall's preexisting conditions.[2] The Court therefore considers whether their testimony about the cause of Mr. Woodall's injuries will be based on sufficient facts and data.

No challenges have been raised to the doctors' fundamental qualifications as doctors (for example, their education or experience). No challenge has been raised to the fact that the doctors treated Mr. Woodall and ran medical tests to determine how to address his injuries, and ultimately that the doctors performed surgery on Mr. Woodall to treat those conditions. Within the scope of that testing and treatment, and in the context of their education and experience, the doctors may have formed opinions about the cause of Mr. Woodall's injuries. For example, testing may reveal whether an injury came from a sharp, sudden force or from a lengthy period of natural deterioration. To the extent that the care each doctor provided for Mr. Woodall can elucidate such questions, that doctor may opine on those matters, regardless of whether he has reviewed every single preexisting document in Mr. Woodall's medical history. The Court therefore finds that the records the doctors reviewed and the tests they performed constitute sufficient facts and data for them to opine on causation without undue speculation.

Critically, the doctors already have demonstrated that they will not speculate on matters for which they lack sufficient data: during depositions, both indicated that they could not quantify the extent to which Mr. Woodall's preexisting injuries were aggravated by the subject crash. Doc. 137-1 at 7–8; Doc. 138-4 at 5. That is, it appears the doctors intend to testify squarely within their authority regarding any causation *that they can attribute* based on their treatment of and interactions with Mr. Woodall, in the context of their undisputed medical and surgical

---

[2] To the extent Defendants have concerns about the foundation for the other categories of opinions Mr. Woodall seeks to elicit from the doctors, they have not raised the issue clearly in their briefing. For example, they do not argue that the doctors lack the foundation to talk about the medical necessity of the treatment they provided to Mr. Woodall.

training and experience. *See* Doc. 144 at 10 ("[Dr. Dillin's] opinions are based on his personal care and treatment of [Mr.] Woodall[.]"); Doc. 134 at 10 ("[Dr. Callewart's] opinions are based on his personal care and treatment of [Mr.] Woodall[.]"). They have made clear that at least some causation questions go beyond the scope of their knowledge, and the Court sees no reason why they would testify differently at trial.

To the extent there may be weaknesses or limitations on the doctors' knowledge, such argument goes to the weight the jury will ascribe to their testimony, not the admissibility of the testimony itself. Furthermore, if any unexpectedly speculative testimony is elicited at trial, defendants may assert their objections then.

## CONCLUSION

For the reasons outlined above, the Court DENIES Defendants' Motion to Exclude the Opinions of Dr. Dillin (Doc. 137) and Motion to Exclude the Opinions of Craig Callewart, M.D. (Doc. 138). It is so ordered.

_____
LAURA FASHING
UNITED STATES MAGISTRATE JUDGE