IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JIMMY WOODALL,

    Plaintiff,

v.                                      Case No. 1:23-cv-00862 LF-JMR

WESTERN EXPRESS, INC.,
and CURT MOELLER,

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION TO EXCLUDE THE OPINIONS OF TODD CAPIELANO**

This matter comes before the Court on Defendants' Motion to Exclude the Opinions of Todd Capielano, M.Ed., LRC, CRC, LPC, CLCP, CCM. Doc. 139. Mr. Capielano is a life care planner that Mr. Woodall has retained and identified as an expert. *Id.* at 2. Defendants argue that Mr. Capielano is not qualified, *id.* at 5; that his reasoning and methodology are flawed, *id.* at 6; and that Drs. Dillin and Callewart, whose findings Mr. Capielano relied upon, are unable to testify as to causation, prognosis, and future care, *id.* at 9. Having reviewed the parties' submissions and the applicable law, the Court finds that Mr. Capielano is an appropriate expert, and the Court therefore denies Defendants' motion.

**BACKGROUND**

This case arises out of a vehicle collision which took place in July 2022 in Gallup, New Mexico. Doc. 43 at 2. In the complaint, Mr. Woodall alleges that he sustained "severe and disabling injuries" as a result of the collision. *Id.* He seeks medical expenses along with damages for physical and mental pain and suffering, physical impairment, loss of enjoyment of life, and lost wages. *Id.* at 6.

## ANALYSIS

Mr. Woodall retained an expert, Mr. Capielano, to create a life care plan and provide an opinion regarding Mr. Woodall's "future medical care needs as related to the injury that he sustained." Doc. 139 at 2–3. Mr. Capielano is not a medical professional; instead, he relied on the opinions of Mr. Woodall's treating physicians, Drs. Dillin and Callewart, to form his own assessment of the costs Mr. Woodall was likely to face. *Id.* at 3. Defendants challenge this expert's qualifications, reasoning, and methodology, as well as his reliance on the opinions of Drs. Dillin and Callewart.

### I.     Mr. Capielano's Qualifications

Defendants first argue that Mr. Capielano is not qualified to render an expert opinion. *Id.* at 5. They argue that because Mr. Capielano is not a physician and is not qualified to diagnose Mr. Woodall's conditions, he cannot form a life care plan. *Id.* Additionally, they argue that it is inappropriate for him to rely on the opinions of Drs. Dillin and Callewart to fill in the gaps in his expertise. *Id.* at 5–6. Defendants make no argument that Mr. Capielano's qualifications are insufficient within the field of life care planning; rather, they appear to argue that life care planning performed by a non-physician cannot support expert designation as a categorical matter.

Courts routinely have accepted life care planners as experts qualified to testify regarding future medical costs, fully accepting that life care planners rely on the medical opinions of physicians who have expertise that the life care planners do not. *See, e.g., Carter v. Monger*, No. 19-cv-03555-GPG, 2022 WL 1115225, at *3–4 (D. Colo. Apr. 13, 2022); *Cunningham v. Harmon*, No. 15-cv-00159-ABJ, 2017 WL 2129731, at *2–3 (D. Wyo. Feb. 17, 2017); *Rivera v. Volvo Cars of N. Am., LLC*, No. 13-cv-00397-KG-KBM, 2015 WL 11120666, at *3–4 (D.N.M. June 22, 2015). "Experts may rely on the reports or information of other experts," *Rivera*, 2015

WL 11120666, at *3, and life care planners do not act outside the scope of their expertise by drawing medical conclusions without medical credentials, *see id*.[1] Based on this logic, the Court agrees with other district courts in this circuit that a life care planner's reliance on the medical reports of other experts, even when the life planner does not have the same medical qualifications, does not make the life care planner unqualified. Given that Defendants raise no other challenges to Mr. Capielano's qualifications as a life care planner, the Court finds him qualified to testify as an expert regarding Mr. Woodall's future medical expenses.

## II. Mr. Capielano's Reasoning and Methodology

Next, Defendants critique Mr. Capielano's reasoning and methodology. They argue that because Mr. Capielano relied on the opinions of Drs. Dillin and Callewart, his life plan must be flawed because Drs. Dillin and Callewart could not quantify the extent of the aggravation to Mr. Woodall's preexisting injuries. Doc. 139 at 7. That is, they assert that the life care plan is flawed because it includes the full expenses of Mr. Woodall's future medical care without accounting for

---

[1] Defendants cite *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 733 (10th Cir. 1993), for the proposition that "Mr. Capielano cannot simply rely on the opinions of Drs. Dillin and Callewart because this witness lacks sufficient expertise to evaluate them." Doc. 139 at 5–6. *TK-7 Corp.* involved a market study conducted by an individual named Mr. Werber, who was not called to testify; the plaintiffs' financial expert, Dr. Boswell, testified about the contents of the Werber market study and stated that he "was satisfied as to the credentials of the individuals preparing the study." 993 F.2d at 730. But Dr. Boswell could not be cross-examined about the underlying methods because he did not conduct the market study himself, nor was there substantial evidence as to his efforts to corroborate the figures in the study. *Id.* at 732. The Tenth Circuit rejected Dr. Boswell's testimony under Rule 703. *Id.*

A federal district court in Wyoming, however, aptly distinguishes the activities of life care planners from other experts who adopt others' opinions wholesale. The court observed that "life care planners routinely rely on doctors' medical reports" and "underlying medical diagnoses that the life care expert would be unqualified to offer independently," and such reliance is "an industry-wide accepted standard." *Cunningham*, 2017 WL 2129731, at *3. The Court agrees with the reasoning in *Cunningham* that life care planning involves circumstances distinct from those in *TK-7 Corp.* Furthermore, in this case, the individuals who provided the underlying opinions—that is, Drs. Dillin and Callewart—have been disclosed as experts, permitting more thorough cross-examination than what was possible in *TK-7 Corp.*

the fact that Defendants can be held liable only for the portion of future medical expenses attributable to the vehicle collision. *Id.* at 8. Additionally, they argue that this flaw in the life care plan "would mislead the jury and prejudice Defendants." *Id.*

Mr. Woodall responds that the alleged shortcomings in the underlying medical opinions used to create the life care plan are properly addressed on cross-examination, not by excluding the life care plan entirely. Doc. 146 at 6. The Court agrees. District courts within the Tenth Circuit have found that alleged shortcomings in the data used to create life care plans go to the weight, not the admissibility, of the life care plan and testimony of the life care planner. *See Price v. Wolford*, No. 07-cv-01076-M, 2008 WL 2570957, at *2 (W.D. Okla. June 24, 2008); *Booth v. Kit, Inc.*, No. 06-cv-01219-JP-KBM, 2009 WL 4263615, at *2 (D.N.M. Mar. 9, 2009).

With regard to the question of unfair prejudice, the Court notes that the trial will almost certainly involve discussions and inquiries about the preexisting injuries Mr. Woodall had and the extent to which they may have been aggravated by the collision in question. That is, the jury will determine the extent to which Mr. Woodall's injuries and present condition are attributable to Defendants' conduct, if any. Given that the jury already will be tasked with determining the extent to which Defendants' conduct exacerbated Plaintiff's condition, it will not unfairly prejudice the Defendants or mislead the jury to have the jury conduct the same inquiry with regard to what portion of future *expenses* is attributable to Defendants' conduct. The law assumes that the jury will follow the instructions it receives. *Samia v. United States*, 599 U.S. 635, 646 (2023). The New Mexico Uniform Civil Jury Instructions state that jurors "may allow damages only for the aggravation [of a preexisting condition] itself and not for the preexisting ailment or condition." UJI 13-1808. Because Defendants may thoroughly cross-examine Mr. Capielano on his reasoning and methodology, they will not be unfairly prejudiced by his expected testimony.

### III. Causation, Prognosis, and Future Care Opinions by Drs. Dillin and Callewart

Finally, Defendants repeat the argument from their earlier motions seeking to exclude Dr. Dillin and Dr. Callewart (Docs. 137 and 138). They argue that because Drs. Dillin and Callewart are "properly excluded from testifying on matters such as future care," Mr. Capielano's reliance on their opinions renders him unable to testify as an expert as well. Doc. 139 at 10.

The Court has denied the motions to exclude the testimony of Drs. Dillin and Callewart. *See* Doc. 167. Any argument seeking to exclude Mr. Capielano's testimony based on the inadmissibility of Drs. Dillin and Callewart's testimony therefore is moot.

### CONCLUSION

For the above reasons, the Court denies the motion to exclude Mr. Capielano's testimony. Doc. 139. It is so ordered.

_____
LAURA FASHING
UNITED STATES MAGISTRATE JUDGE

5