IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JIMMY WOODALL,

    Plaintiff,

v.                                                                     Case No. 1:23-cv-00862 LF-JMR

WESTERN EXPRESS, INC.,
and CURT MOELLER,

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION TO EXCLUDE THE OPINIONS OF JUSTIN BLOK**

This matter comes before the Court on Defendants' Motion to Exclude the Opinions of Justin Blok, MBA, CFE, CLP, filed January 13, 2025. Doc. 140. Mr. Blok is an economist whom Mr. Woodall hired as an expert to provide an opinion regarding Mr. Woodall's lost earnings capacity, the present value of the costs identified in his life care plan, and other pecuniary matters. *See id.* at 2; Doc. 174-1 at 5; Doc. 147-3 at 2. Defendants argue that Mr. Blok is not qualified, *id.* at 5; that his reasoning and methodology are flawed, *id.* at 6; and that Drs. Dillin and Callewart, whose findings Mr. Blok indirectly relied upon due to his use of Mr. Capielano's life care plan, are unable to testify as to causation, prognosis, and future care, *id.* at 9. Having reviewed the parties' submissions and the applicable law, the Court finds that Mr. Blok is an appropriate expert. The Court therefore denies Defendants' motion.

**BACKGROUND**

This case arises out of a vehicle collision which took place in July 2022 in Gallup, New Mexico. Doc. 43 at 2. In the complaint, Mr. Woodall alleges that he sustained "severe and disabling injuries" as a result of the collision. *Id.* He seeks medical expenses along with damages

for physical and mental pain and suffering, physical impairment, loss of enjoyment of life, and lost wages. *Id.* at 6.

## ANALYSIS

Mr. Woodall retained an expert, Mr. Blok, to provide an opinion regarding Mr. Woodall's lost earning potential, the present value of his life care plan, and other pecuniary matters. Doc. 140 at 2; Doc. 147-1 at 5; Doc. 147-3 at 2. Mr. Blok relied on Mr. Capielano's life care plan in determining Mr. Woodall's alternative earnings and damages. Mr. Capielano, in turn, relied on the opinions of Mr. Woodall's treating physicians, Drs. Dillin and Callewart, to form his own assessment of the costs Mr. Woodall was likely to face. *Id.* at 3. Defendants challenge Mr. Blok's qualifications, reasoning, and methodology, as well as his reliance on the opinions of Drs. Dillin and Callewart vis a vis Mr. Capielano's life care plan.

### I. Mr. Blok's Qualifications

Defendants first argue that Mr. Blok is not qualified to render an expert opinion. *Id.* at 5. They argue that Mr. Blok is not a physician and is not qualified to diagnose Mr. Woodall's conditions. *Id.* Additionally, they argue that it is inappropriate for him to rely on the opinions of Mr. Capielano and Drs. Dillin and Callewart to fill in the gaps in his expertise. *Id.* at 5–6. Defendants make no argument that Mr. Blok's qualifications are insufficient within the field of economics.

Mr. Blok's lack of medical qualifications is not concerning; Mr. Blok has not been called as an expert in any medical field. Rather, he has an undergraduate degree in risk management and finance, a master's degree in business administration, and a master's degree in accounting—all financial and business-related credentials—and he has been called as an expert to discuss financial matters. Doc. 147-1 at 5. He will not opine on whether Mr. Woodall can work, nor will

he opine on the causation of Mr. Woodall's injuries. *Id.* at 5–6. He therefore does not need to have a medical background. To the extent his valuations may rely on medical opinions regarding the work Mr. Woodall is capable of doing, such reliance is appropriate and typical for economists. *Flores v. Henderson*, No. 1:20-cv-00618-RBJ, 2023 WL 7673407, at *1 (D. Colo. Aug. 7, 2023); *see also Burlington N. & Santa Fe Ry. Co. v. Garcia*, No. 6:98-cv-00740-MV-RLP, 2000 WL 36740057, at *4 (D.N.M. Jan. 7, 2000) ("[A]n expert may rely upon any facts or data reasonably relied upon by experts in the field . . . [including] information supplied by another expert[.]").

## II.     Mr. Blok's Reasoning and Methodology

Next, Defendants critique Mr. Blok's reasoning and methodology. They argue that because Mr. Blok relied on the opinion of Mr. Capielano, who relied on the opinions of Drs. Dillin and Callewart, Mr. Blok's financial projections must be flawed because Drs. Dillin and Callewart could not quantify the extent of the aggravation to Mr. Woodall's preexisting injuries. Doc. 140 at 7. That is, they assert that the financial projections are flawed because they include the full financial ramifications of Mr. Woodall's medical conditions without accounting for the fact that Defendants can be held liable only for the portion attributable to the vehicle collision. *Id.* at 8. Additionally, they argue that this flaw in the financial evaluation "would mislead the jury and prejudice Defendants." *Id.* at 9.

Mr. Woodall responds that the alleged shortcomings in the underlying medical opinions used to create the life care plan and, in turn, the economic projections by Mr. Blok are properly addressed on cross-examination, not by excluding Mr. Block as an expert entirely. Doc. 147 at 7. The Court agrees. District courts within the Tenth Circuit have found that alleged shortcomings in the data used to calculate economic losses go to the weight, not the admissibility, of the

3

expert's findings and testimony. *See Esparza v. Regent Ins. Co.*, No. 17-cv-01163-JTM-KGG, 2019 WL 3020898, at *4 (D. Kan. July 10, 2019) (when no expert was designated to compare plaintiff's pre- and post-injury earning capacity, "challenges to the assumptions behind [economist and financial expert] Baker's calculations of future lost wages go to the weight to be given Baker's testimony, not its admissibility"); *Langille v. McLane Foodservice, Inc.*, No. 12-cv-189-J, 2013 WL 8717948, at *6 (D. Wyo. Dec. 11, 2013) (economist's reliance on medical record to determine damages, including past medical expenses, "does not vouch for or indicate whether the medical expenses were necessary or reasonable," and concerns about inclusion of certain medical expenses in the calculations "go to the weight of the evidence and not its admissibility").

    With regard to the question of unfair prejudice, the Court notes that the trial almost certainly will involve discussions and inquiries about the preexisting injuries Mr. Woodall had and the extent to which they may have been aggravated by the collision in question. That is, the jury will determine the extent to which Mr. Woodall's injuries and present condition are attributable to Defendants' conduct, if any. Given that the jury already will be tasked with determining the extent to which Defendants' conduct exacerbated Mr. Woodall's condition, it will not unfairly prejudice the Defendants or mislead the jury to have the jury conduct the same inquiry with regard to what portion of future *financial effects* is attributable to Defendants' conduct. The law assumes that the jury will follow the instructions it receives. *Samia v. United States*, 599 U.S. 635, 646 (2023). The New Mexico Uniform Civil Jury Instructions state that jurors "may allow damages only for the aggravation [of a preexisting condition] itself and not for the preexisting ailment or condition." UJI 13-1808. If Mr. Blok had performed his calculations assuming a certain fraction of the expenses were attributable to Defendants, he likely would have

4

invaded the province of the jury by opining on causation without the qualifications to do so; instead, his calculations do not make such presumptions, and the jury will determine what portion of any damages can be attributed to Defendants' conduct. Because Defendants' may thoroughly cross-examine Mr. Blok on his reasoning and methodology, they will not be unfairly prejudiced by his expected testimony.

### III.    Causation, Prognosis, and Future Care Opinions by Drs. Dillin and Callewart

Finally, Defendants repeat the argument from their earlier motions seeking to exclude Dr. Dillin and Dr. Callewart (Docs. 137 and 138). They argue that because Drs. Dillin and Callewart are "properly excluded from testifying on matters such as future care," Mr. Blok's reliance on their opinions via Mr. Capielano's life care plan renders Mr. Blok unable to testify as an expert as well. Doc. 140 at 10.

The Court has denied the motions to exclude the testimony of Drs. Dillin and Callewart and Mr. Capielano. *See* Doc. 167, Doc. 175. Any argument seeking to exclude Mr. Blok's testimony based on the inadmissibility of testimony by Drs. Dillin and Callewart and Mr. Capielano therefore is moot.

### CONCLUSION

For the above reasons, the Court denies the motion to exclude Mr. Blok's testimony. Doc. 140. It is so ordered.

_____
LAURA FASHING
UNITED STATES MAGISTRATE JUDGE

5